## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| David J. Sample,<br><br>Plaintiff,<br><br>v.<br><br>City of Woodbury, a Minnesota municipal corporation, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Mark J. Vierling, Sean P. Stokes, Rebecca Christensen and Joseph Van Thomme,<br><br>Defendants. | Civil No. 15-CV-602 (SRN/BRT)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Kevin K. Shoeberg, Kevin K. Shoeberg, P.A., 1805 Woodlane Drive, Woodbury, Minnesota 55125, for Plaintiff.

Leonard J. Schweich and Jamie L. Jonassen, Jardine, Logan & O'Brien, P.L.L.P., 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, Minnesota 55042, for Defendant City of Woodbury.

Paul C. Peterson and Ryan P. Myers, Lind, Jensen, Sullivan & Peterson, A Professional Association, 1300 AT&T Tower, 901 Marquette Avenue South, Minneapolis, Minnesota 55402, for Defendants Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Mark J. Vierling, Sean P. Stokes, Rebecca Christensen, and Joseph Van Thomme.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant City of Woodbury's Motion to Dismiss in Lieu of Answer [Doc. No. 16] and Defendants Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Mark J. Vierling, Sean P. Stokes, Rebecca Christensen, and Joseph Van Thomme's (the "Eckberg Defendants") Motion to Dismiss and for Sanctions Pursuant to 42

U.S.C. § 1988(b) [Doc. No. 21].  For the reasons stated below, Defendants' Motions are

granted in part and denied in part.

## II.   BACKGROUND

This lawsuit arises out of the prosecution of Plaintiff David J. Sample by Defendant

Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP ("Eckberg"), the law firm retained

to prosecute certain criminal matters on behalf of Defendant City of Woodbury (the

"City").  (See Second Am. Compl. [Doc. No. 7] ¶¶ 3, 5, 17.)  According to the Second

Amended Complaint, the Woodbury Police Department responded to a 911 call at

Plaintiff's Woodbury residence on August 29, 2013, regarding an incident in which Julie

Dale was the alleged victim.  (Id. ¶¶ 6, 8.)  Plaintiff contends that the police

impermissibly searched a saddlebag on a motorcycle in Plaintiff's garage and removed a

handgun.  (Id. ¶ 8.)  He also claims that, on the following day, police reports regarding

the incident were forwarded to the Washington County Attorney's Office, but that

Washington County declined to prosecute Plaintiff.  (Id. ¶ 10.)

According to Plaintiff, on September 13, 2013, Mark Vierling of the Eckberg law

firm filed a certificate of representation in Hennepin County District Court, indicating

that he represented Julie Dale in a civil matter.  (Id. ¶ 13.)  At some point that month, Ms.

Dale filed a petition for an order for protection.  (Id. ¶ 16.)  Meanwhile, Plaintiff alleges,

Mr. Vierling obtained copies of the police reports regarding the August 29 incident,

despite knowing that he and his firm had a conflict of interest due to their representation

of Ms. Dale in the civil matter.  (Id. ¶ 12.)  Thereafter, on September 26, 2013, another

Eckberg attorney, Rebecca Christensen, filed a criminal complaint on behalf of the City

against Plaintiff.  (Id. ¶ 17.)  Less than two months later, however, Eckberg requested that another law firm prosecute the case due to the conflict of interest.  (Id. ¶ 18.)  According to the Second Amended Complaint, Plaintiff subsequently brought a motion to dismiss the criminal charges in Washington County District Court, alleging prosecutorial misconduct and a violation of his constitutional rights, which was granted on August 29, 2014.  (Id. ¶¶ 22, 24 & Ex. A.)

Plaintiff alleges that two additional incidents involving him and Ms. Dale occurred in 2014.  First, Plaintiff asserts that Ms. Dale assaulted him in January 2014.  (Id. ¶ 27.) According to Plaintiff, Eckberg acted as the prosecutor in that matter and provided Plaintiff with a victim notice, but Plaintiff's attorney notified Defendants at the pre-trial conference in June 2014 of the conflict of interest.  (Id. ¶¶ 27–28.)  Defendants apparently then dismissed the assault charge against Ms. Dale.  (Id. ¶ 29.)  Second, Plaintiff alleges that, in May 2014, Defendants issued two new criminal citations against him.  (Id. ¶ 30.)  Plaintiff's attorney advised Defendants of the conflict of interest at Plaintiff's first appearance, and Defendants sent the file to a different firm in September 2014.  (Id. ¶¶ 31–32.)

Plaintiff filed this lawsuit in February 2015 and amended the complaint twice. (See Compl. [Doc. No. 1]; Am. Compl. [Doc. No. 5]; Second Am. Compl. [Doc. No. 7].) The Second Amended Complaint is now the operative complaint in this action, and it asserts four causes of action against Defendants.  In Counts I and II, for abuse of legal process and malicious prosecution, respectively, Plaintiff alleges that Defendants improperly "caus[ed] charges to be issued against [him]" and "brought the criminal

action against [him]" in order to gain an advantage for a client in a civil proceeding.  (See id. ¶¶ 33–44.)  In Count III, Plaintiff asserts a claim under 42 U.S.C. § 1983.  (See id. ¶¶ 45–52.)  In particular, Plaintiff alleges that Defendants violated his constitutional rights by "bringing criminal charges against him" because Eckberg disregarded the conflict of interest and because Defendants "had no policy in place that would have required [Eckberg] to conflict the case out or that did not allow the City Attorney to also represent other people or businesses when the action was adverse to one of their own residents."  (See id. ¶¶ 46–49.)  Finally, Count IV alleges a claim for negligence based on the theory that Defendants violated their "duty to the Plaintiff to ensure that proper conflict procedures were in place," their "duty to properly train[] the Woodbury Police Department on the Plaintiff's rights to bear arms and be free of unreasonable searches and seizures," and their duty to "properly train [their] officers and employees and contractors."  (Id. ¶¶ 54–56.)  Defendants moved to dismiss the claims on April 10, 2015, and the matter was heard on June 3.

## III.    DISCUSSION

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations, see Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d

4

1486, 1488 (8th Cir. 1990).  In addition, the Court ordinarily does not consider matters

outside the pleadings on a motion to dismiss.  See Fed. R. Civ. P. 12(d).  The Court may,

however, consider exhibits attached to the complaint and documents that are necessarily

embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir.

2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir.

2007).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must

contain . . . a short and plain statement of the claim showing that the pleader is entitled to

relief."  The U.S. Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), clarified that this Rule does not require

that a complaint contain "detailed factual allegations," but it does require that it contain facts

with enough specificity "to raise a right to relief above the speculative level."  Twombly,

550 U.S. at 555.  In other words, this standard "calls for enough fact[s] to raise a reasonable

expectation that discovery will reveal evidence of [the claim]."  Id. at 556. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Thus, to survive a

motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is

plausible on its face."  Twombly, 550 U.S. at 570.

The City and the Eckberg Defendants filed separate motions to dismiss.  The City

argues that Plaintiff's claims are barred by absolute prosecutorial immunity and statutory

discretionary immunity, and that Plaintiff has failed to state a claim under 42 U.S.C.

§ 1983.  (The City's Mem. of Law in Supp. of Mot. to Dismiss in Lieu of Answer [Doc.

No. 18] ("The City's Mem.") at 1.)  The Eckberg Defendants similarly argue that

Plaintiff's claims are barred by absolute prosecutorial immunity and also that Eckberg

owed no duty of care to Plaintiff arising out of its representation of the City.  (Eckberg's

Mem. of Law in Supp. of Mot. to Dismiss and for Sanctions Pursuant to 42 U.S.C.

§ 1988(b) [Doc. No. 23] ("Eckberg's Mem.") at 2, 14.)  All Defendants seek their

reasonable attorneys' fees and costs.  (See The City's Mot. to Dismiss in Lieu of Answer

[Doc. No. 16] at 1; Eckberg's Mot. to Dismiss and for Sanctions Pursuant to 42 U.S.C.

§ 1988(b) [Doc. No. 21] at 1.)

    The Court agrees with Defendants that all of Plaintiff's claims must be dismissed.

However, the Court does not find that an award of attorneys' fees or sanctions is

appropriate in this case.

### A.    Absolute Prosecutorial Immunity

    Defendants argue that each of Plaintiff's claims is barred by absolute prosecutorial

immunity.  (The City's Mem. at 4; Eckberg's Mem. at 10.)  Absolute immunity "defeats a

suit at the outset, so long as the official's actions were within the scope of the immunity."

Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976).  According to the Eighth Circuit Court

of Appeals:

> The purpose of absolute immunity is to protect the function of the prosecutor
> as a key participant in the criminal process.  The doctrine involves a choice
> between protecting all prosecutors from harassing lawsuits over their official
> acts and providing redress for all injuries occasioned by those acts.  When
> such a choice is made in the law, it is inevitable that someone will be hurt.
> But, the choice must be made, and it has been long decided that it is better to
> allow a few wrongs to go unredressed than to expose all prosecutors to the
> risk of retaliation for their occasional honest mistakes.

Williams v. Hartje, 827 F.2d 1203, 1208 (8th Cir. 1987).  Absolute immunity applies

whether the lawsuit is based on state common law tort claims or federal civil rights claims.

See Imbler, 424 U.S. at 429 ("We hold . . . that in initiating a prosecution and in presenting

the State's case, the prosecutor is immune from a civil suit for damages under [42 U.S.C. §]

1983."); Brown v. Dayton Hudson Corp., 314 N.W.2d 210, 214 (Minn. 1981) (holding, in a

case alleging malicious prosecution, that "public prosecutors, when acting within the scope

of their duties by filing and maintaining criminal charges, are absolutely immune from civil

liability").  And, a municipality may derivatively avail itself of that immunity where a

plaintiff seeks to hold the municipality responsible for its prosecutor's actions.  See

Patterson v. Von Riesen, 999 F.2d 1235, 1238 (8th Cir. 1993) ("Because [the plaintiff] may

not hold the prosecutors liable, he may not hold the county liable."); In re Scott Cnty.

Master Docket, 672 F. Supp. 1152, 1187 (D. Minn. 1987) ("[T]here is authority for the

proposition that the county may derivatively avail itself of the prosecutor's absolute

immunity in a section 1983 action which seeks to hold the county responsible for the

prosecutor's actions."); Brotzler v. Cnty. of Scott, 427 N.W.2d 685, 691 (Minn. Ct. App.

1988) (holding that "a county may avail itself of the prosecutor's absolute immunity").

    In determining whether an official's actions fall within the scope of the immunity,

the Court uses "a functional approach that looks to 'the nature of the function performed,

not the identity of the actor who performed it.'"  Brodnicki v. City of Omaha, 75 F.3d 1261,

1266 (8th Cir. 1996) (quoting Forrester v. White, 484 U.S. 219, 229 (1987)).  Thus, the

scope of a prosecutor's absolute immunity has been found to include actions associated with

"the initiation and pursuit of a criminal prosecution, the presentation of the state's case at

trial, and other conduct that is intimately associated with the judicial process," id., even if

the actions are "patently improper" or made "in a consciously malicious manner, or

vindictively, or without adequate investigation, or in excess of [the prosecutor's]

jurisdiction," Williams, 827 F.2d at 1208–09.  See Brown, 314 N.W.2d at 213 (adopting the

majority rule, which extends absolute immunity to prosecutors when acting within the scope

of their duties by filing and maintaining criminal charges, "notwithstanding allegations of

negligence, improper motive or lack of probable cause").

     While the scope of the immunity generally does not extend to investigatory or

administrative actions, the immunity does attach to administrative obligations that

"necessarily require legal knowledge and the exercise of related discretion," and to

management tasks, like supervision and training, that are "directly connected with the

prosecutor's basic trial advocacy duties."  Van de Kamp v. Goldstein, 555 U.S. 335, 342,

344, 346 (2009).  Likewise, whether to establish, for example, an information management

system regarding impeachment information falls within the scope of the immunity because

"determining the criteria for inclusion or exclusion requires knowledge of the law."  Id. at

348.  Such an activity is unlike truly administrative tasks, such as "workplace hiring, payroll

administration, [and] the maintenance of physical facilities."  Id. at 344.

     Relevant to the present matter, several courts have determined that the presence of a

conflict of interest does not destroy a prosecutor's absolute immunity.  For example, in

Eldridge v. Gibson, the plaintiff alleged in a § 1983 claim that the appointment of certain

private attorneys to act as special prosecutors in his criminal trial violated his constitutional

rights because those attorneys also represented the crime victim in a civil action against the

plaintiff.  332 F.3d 1019, 1020 (6th Cir. 2003).  In affirming the district court's dismissal of

the complaint on the basis of absolute immunity, the Sixth Circuit Court of Appeals noted

that whether "some of the prosecutorial actions taken by the special prosecutors in the

criminal trial might have been 'motivated by the civil ramifications,'" was "precisely the

type of inquiry into motive that the doctrine of absolute immunity is intended to prevent."

Id. at 1021.  Thus, because the private attorneys were functioning as prosecutors during the

criminal trial, the court "decline[d] to inquire into whether the potential conflict of interest

inherent in th[e] situation resulted in the prosecutors having improper motives in so doing."

Id.; see also, e.g., Brummett v. Camble, 946 F.2d 1178, 1181 (5th Cir. 1991) ("Inasmuch as

the purposes of extending absolute immunity to prosecutors are to avoid deflecting the

prosecutor's energies from his public duties and to encourage the independent exercise of

judgment required by his office, foreclosing that immunity upon allegations of a conflict of

interest would seriously undermine such policies.") (internal citation omitted).

   Similarly, in Petry v. Lawler, an attorney acting in a dual capacity as a county

attorney and private attorney was sued under § 1983 for purposely causing the plaintiff to be

arrested on child molestation charges without probable cause.  718 F. Supp. 1396, 1397

(S.D. Ind. 1989).  The plaintiff argued that the attorney could not invoke absolute immunity

because he was operating under a conflict of interest by representing the plaintiff's ex-wife

in their child visitation dispute at the same time that he initiated the child molestation

charges against the plaintiff.  Id. at 1397, 1399.  The district court rejected that argument,

stating:

> Where professional discipline acts as a curb on prosecutorial misconduct, personal liability acts only as a supplemental deterrent, which, while conferring a benefit upon the wronged individual, also confers a great cost upon the public by disrupting the prosecutor's attention to his public responsibilities. The Supreme Court has decided that when these public and individual interests collide, the interest of the public is paramount.

Id. at 1400. And, in Isbell v. Warren, the plaintiff sued the county attorney who prosecuted him on criminal charges for violating his constitutional rights by failing to recuse herself after learning that the plaintiff had initiated a civil lawsuit against her private client. No. 4:13-cv-2785, 2014 WL 3868007, at *4 (M.D. Pa. Aug. 4, 2014). The district court determined that the plaintiff's challenges were all directed at the county attorney's role as an advocate and, therefore, she was entitled to absolute immunity. Id. at *10. In drawing this conclusion, the court rejected the argument that the presence of a conflict of interest transforms otherwise immune conduct into conduct that falls outside of the prosecutor's jurisdiction. Id.; see also, e.g., Young v. Blatt, Civ. Action No. 5:13CV89, 2013 WL 5961090, at *2–3 (N.D.W. Va. Nov. 6, 2013) (finding that a county attorney was entitled to absolute immunity for prosecuting the plaintiff for domestic abuse even though the attorney had worked at a law firm of which the plaintiff was a former client).

Here, Counts I and II of Plaintiff's Second Amended Complaint are based solely on allegations that Defendants improperly or maliciously brought criminal charges against Plaintiff and used the criminal proceedings against Plaintiff. In other words, Plaintiff alleges abuse of legal process and malicious prosecution based on the Eckberg Defendants' initiation and maintenance of criminal charges, and such conduct falls squarely within the scope of a prosecutor's absolute immunity. As discussed above, the

presence of a purported conflict of interest created by the Eckberg Defendants'

representation of a party in a civil matter against Plaintiff does not destroy the immunity,

even if it renders Defendants' decision to pursue the charges patently improper.  Thus,

the Eckberg Defendants are entitled to absolute prosecutorial immunity as to Counts I

and II, and the City is entitled to derivative immunity.

Count III, which asserts a claim under § 1983, is based in part on allegations that

the Eckberg Defendants violated Plaintiff's constitutional rights by bringing criminal

charges against him, and in part on allegations that Defendants lacked a proper conflicts

policy.  For the reasons discussed above in relation to Counts I and II, the claim is barred

to the extent that it is based on the initiation and maintenance of criminal proceedings.

The claim is similarly barred to the extent that it is based on the lack of a conflicts policy.

While the creation and implementation of an office policy may be an administrative task,

the creation and implementation of the particular type of policy at issue—i.e., a conflicts-

of-interest policy—are obligations that "necessarily require legal knowledge and the

exercise of related discretion."  Likewise, such a policy would inform a prosecutor whether

he or she should file charges against a particular individual and so is "directly connected

with the prosecutor's basic trial advocacy functions."  This type of policy is inherently

different than administrative tasks like hiring, payroll administration, or facilities

maintenance, which require no legal knowledge or exercise of discretion and are not directly

connected to a prosecutor's advocacy functions.[1]

---

[1]     Because the Court finds that Count III is barred by absolute immunity, it declines
to address The City's argument that Plaintiff has failed to state a claim under § 1983.

Finally, Count IV, which asserts a claim for negligence, is based in part on allegations that Defendants violated their duty to Plaintiff to ensure that proper conflicts procedures were in place, and in part on allegations that Defendants violated their duty to properly train the Woodbury Police Department on Plaintiff's rights to bear arms and be free of unreasonable searches and seizures. For the reasons discussed above in relation to Count III, the claim is barred to the extent that it is based on the lack of a conflicts policy. The allegations relating to a failure to train the police department on Plaintiff's constitutional rights is discussed below, in Part III.B.

Despite Plaintiff's arguments to the contrary, the cases he cites do not mandate a different result. (See Pl.'s Resp. Mem. of Law Regarding the City's Mot. to Dismiss [Doc. No. 27] ("Pl.'s City Opp.") at 10–20; Pl.'s Resp. Mem. of Law Regarding Eckberg Mot. to Dismiss [Doc. No. 26] ("Pl.'s Eckberg Opp.") at 10–21.) First, several of the cases deal with the proper disposition of the proceedings in which the prosecutor actually engaged in misconduct or acted under a conflict of interest, not whether the prosecutor is immune from civil liability in a separate action arising from that alleged misconduct. See Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 790 (1987) (reversing convictions for criminal contempt and holding that "counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order"); Ganger v. Peyton, 379 F.2d 709, 714 (4th Cir. 1967) (vacating the criminal defendant's sentence because the prosecutor's simultaneous representation of the defendant's wife in their divorce proceedings violated his right to due process); Tennessee v. Culbreath, 30 S.W.3d 309, 310–11 (Tenn. 2000) (disqualifying the prosecutor in a civil

nuisance action brought against the defendants and dismissing the criminal indictments against the defendants because the prosecutor was operating under a conflict of interest); <u>Macon v. Virginia</u>, 46 S.E.2d 396, 401–04 (Va. 1948) (remanding for a new trial in light of the prosecutor's coercive conduct in obtaining the defendant's confession).  Not only are these cases inapposite to the present claims but, as alleged in the Second Amended Complaint, the Washington County District Court already dismissed the criminal charges that were filed by Defendants against Plaintiff while the purported conflict of interest existed.

Second, to the extent that the cases cited by Plaintiff do arise in the proper context, they are either factually distinguishable or have been overruled.  For example, in <u>McGhee v. Pottawattamie County</u>, the Eighth Circuit determined that immunity does not apply to a county attorney who "obtain[ed], manufactur[ed], coerc[ed] and fabricat[ed] evidence before filing formal charges, because th[at] is not 'a distinctly prosecutorial function.'"  547 F.3d 922, 933 (8th Cir. 2008).[2]  Similarly, in <u>Helstoski v. Goldstein</u>, the Third Circuit determined that "allegations of deliberate leaks by the prosecutor of false information concerning [the plaintiff] in order to damage his political prospects . . . , if it occurred would lie outside of the rationale for absolute immunity."  552 F.2d 564, 566 (3d Cir. 1977). Neither of these cases is on point because, as discussed above, the conduct alleged by Plaintiff to be improper was a distinctly prosecutorial function that falls directly within the

---

[2]    Although Plaintiff cites <u>McGhee</u> for the proposition that "[a]bsolute immunity does not apply when the prosecutor has an actual conflict of interest," (Pl.'s Eckberg Opp. at 10), <u>McGhee</u> does not discuss conflicts of interest at all.

rationale for absolute immunity.  And, while the Ninth Circuit's holding in Beard v. Udall, 648 F.2d 1264, 1271 (9th Cir. 1981)—i.e., that "where a prosecutor faces an actual conflict of interest, and files charges he or she knows to be baseless, the prosecutor is acting outside the scope of his or her authority and thus lacks immunity"—appears to be more on point, that decision was overruled by the Ninth Circuit sitting en banc in Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986).  Accordingly, Plaintiff has failed to present any legal authority that supports his position, and the Court finds that Defendants are entitled to absolute immunity as to Counts I through III and part of Count IV.

B. **Statutory Discretionary Immunity**

To the extent that Count IV alleges that Defendants violated their duty to properly train the Woodbury Police Department on Plaintiff's rights to bear arms and be free of unreasonable searches and seizures, it is barred by statutory discretionary immunity. Under Minnesota Statutes § 466.03, municipalities are immune from liability as to "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."  Minn. Stat. § 466.03, subd. 6. Notably, "[h]iring, supervising, training, and retaining municipal employees are policy-level activities that are protected by statutory immunity."  Fear v. Indep. Sch. Dist. 911, 634 N.W.2d 204, 212 (Minn. Ct. App. 2001).  This includes the hiring, supervising, and training of police officers.  See Hassan v. City of Minneapolis, 489 F.3d 914, 920 (8th Cir. 2007) ("[B]ecause hiring, supervising, and training police officers are policy-level activities, the City, by statute, has discretionary immunity from any tort liability based on negligence."); Maras v. City of Brainerd, 502 N.W.2d 69, 78 (Minn. Ct. App. 1993)

(finding that decisions regarding the training that a city provides to its police officers are policy decisions protected by statutory discretionary immunity).

Plaintiff does not dispute the application of statutory discretionary immunity to this portion of his claim, instead arguing that "the failure to train officers properly was not the only negligent act of the defendant, City of Woodbury." (Pl.'s City Opp. at 29.) Because a municipality's decisions regarding the training of its police officers have been expressly held to fall within the protections of Minnesota Statutes § 466.03, this portion of Count IV also must be dismissed.[3]

### C. Attorneys' Fees

Finally, Defendants request an award of sanctions or attorney's fees. Under 42 U.S.C. § 1988(b), the Court has discretion to award the prevailing party in a § 1983 action a reasonable attorney's fee. However, as noted by the Eighth Circuit: "Defendants are not automatically entitled to an award of attorney's fees merely because they prevail. A court may award prevailing defendants attorney's fees under section 1988 only if the plaintiff's claim was 'frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so.'" Flowers v. Jefferson Hosp. Ass'n, 49 F.3d 391, 392 (8th Cir. 1995) (quoting Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422 (1978)).

The Eckberg Defendants argue that "[Plaintiff's] complaint is frivolous on its face" in light of Imbler and its progeny. However, despite the ample authorities from other circuit courts of appeal, the Court notes that neither Plaintiff nor Defendants cited a case from the

---

[3]    Because the Court finds that Count IV is barred by absolute immunity and statutory discretionary immunity, it declines to address the Eckberg Defendants'

Eighth Circuit Court of Appeals that was directly on point—i.e., that involved a conflict of interest created by a prosecutor pursuing criminal charges against a defendant while simultaneously representing a private client in a civil action against that same defendant. Thus, the Court does not find that Plaintiff's claims were frivolous, unreasonable, or groundless and—lacking any evidence of bad faith—declines to award attorneys' fees to Defendants.  Accordingly, Defendants' Motions are denied in that limited regard.

## IV.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT**:

1.    Defendant City of Woodbury's Motion to Dismiss in Lieu of Answer [Doc. No. 16] is **GRANTED IN PART AND DENIED IN PART**, as detailed herein;

2.    Defendants Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Mark J. Vierling, Sean P. Stokes, Rebecca Christensen, and Joseph Van Thomme's Motion to Dismiss and for Sanctions Pursuant to 42 U.S.C. § 1988(b) [Doc. No. 21] is **GRANTED IN PART AND DENIED IN PART**, as detailed herein; and

3.    Plaintiff's Second Amended Complaint [Doc. No. 7] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 3, 2015              s/Susan Richard Nelson
                                      SUSAN RICHARD NELSON
                                      United States District Judge

alternative argument that they did not owe Plaintiff a duty of care.