UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| David J. Sample,<br><br>       Plaintiff,<br><br>v.<br><br>City of Woodbury, a Minnesota municipal corporation, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Mark J. Vierling, Sean P. Stokes, Rebecca Christensen and Joseph Van Thomme,<br><br>       Defendants. | Civil No. 15-cv-602 (SRN/BRT)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Kevin K. Shoeberg, Kevin K. Shoeberg, P.A., 1805 Woodlane Drive, Woodbury, Minnesota 55125, for Plaintiff.

Leonard J. Schweich and Vicki A. Hruby, Jardine, Logan & O'Brien, P.L.L.P., 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, Minnesota 55042, for Defendant City of Woodbury.

Paul C. Peterson and Ryan P. Myers, Lind, Jensen, Sullivan & Peterson, PA, 901 Marquette Avenue South, Ste. 1300, Minneapolis, Minnesota 55402, for Defendants Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Mark J. Vierling, Sean P. Stokes, Rebecca Christensen, and Joseph Van Thomme.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant City of Woodbury's Renewed Motion to Dismiss ("Renewed Mot. to Dismiss") [Doc. No. 56]. For the reasons set forth below, that Motion is granted in part and denied in part.

## I. BACKGROUND

### A. Facts

This lawsuit arises out of the prosecution of Plaintiff David J. Sample ("Sample") by Defendant Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP (the "Firm"), the law firm retained to prosecute certain criminal matters on behalf of Defendant City of Woodbury (the "City"). (*See* Second Am. Compl. at ¶¶ 3, 5, 17 [Doc. No. 7].) Defendants Mark Vierling ("Vierling"), Rebecca Christensen ("Christensen"), Sean Stokes ("Stokes"), and Joseph Van Thomme ("Thomme") (collectively, the "Attorneys") were all lawyers at the Firm during the time in question. (*Id.* at ¶ 4.) The contract between the City and the Firm contained the following relevant clause:

> **Conflicts of Interest:** The Law Firm will notify the City if the Law Firm represents or has ever represented an opposing party in a legal matter, whether within or outside of any of the retainers.

(Aff. of Jamie L. Jonassen [Doc. No. 19], Ex. 1 ("City-Firm Contract") at 2 [Doc. No. 19-1].)[1]

According to Sample, the Woodbury Police Department responded to a 911 call at Sample's Woodbury residence on August 29, 2013, regarding an incident in which Julie Dale ("Dale") was the alleged victim. (Sec. Am. Compl. at ¶¶ 6, 8.) Sample contends that the police impermissibly (i.e., without a warrant or permission) searched a saddlebag on a motorcycle in his garage and seized a handgun. (*Id.* at ¶ 8.) He also claims that the following day, police reports regarding the incident were forwarded to the Washington

---

[1] The City-Firm Contract is properly considered on the City's Renewed Motion to Dismiss because it is embraced by the Second Amended Complaint and is a public record. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

County Attorney's Office, but that Washington County declined to prosecute. (*Id.* at ¶ 10.)

According to Sample, on September 13, 2013, Vierling filed a certificate of representation in Hennepin County District Court, indicating that he represented Dale in a civil matter. (*Id.* at ¶ 13.) At some point that month, Dale filed a petition for an order for protection against Sample. (*Id.* at ¶ 16.) Meanwhile, Sample alleges, Vierling obtained copies of the police reports regarding the August 29 incident, despite knowing that he and his firm had a conflict of interest due to their representation of Dale in the civil matter. (*Id.* at ¶ 12.) On September 26, 2013, Christensen filed a criminal complaint on behalf of the City against Sample. (*Id.* at ¶ 17.) Less than two months later, however, the Firm requested that another law firm prosecute the case due to the conflict of interest. (*Id.* at ¶ 18.) Sample subsequently brought a motion to dismiss the criminal charges in Washington County District Court, alleging prosecutorial misconduct and a violation of his constitutional rights, which was granted on August 29, 2014. (*Id.* at ¶¶ 22, 24 & Ex. A.) The state court held that the Firm violated Sample's constitutional right to due process by failing to refer Sample's prosecution to another law firm considering its conflict of interest (i.e., the fact that the Firm was representing Dale at the same time it was prosecuting Sample). (*Id.*, Ex. A at 11–19[2].)

Sample alleges that two additional incidents involving him and Dale occurred in 2014. First, Sample contends that Dale assaulted him in January 2014. (*Id.* at ¶ 27.) According to Sample, the Firm acted as the prosecutor in that matter and provided

---

[2] The Court cites to the page numbers at they appear in Exhibit A.

Sample with a victim notice, but Sample's attorney notified the Firm of the conflict of interest at the pre-trial conference in June 2014.  (*Id.* at ¶¶ 27–28.)  The Firm apparently then dismissed the assault charge against Dale.  (*Id.* at ¶ 29.)  Second, Sample alleges that, in May 2014, the Firm brought two new criminal citations against him.  (*Id.* at ¶ 30.)  Sample's attorney advised the Firm of the conflict of interest at Sample's first appearance and the Firm subsequently sent the file to a different firm in September 2014.  (*Id.* at ¶¶ 31–32.)  There is no allegation that the City was ever aware of any of the conflicts of interest described above until this lawsuit was filed.

### B. Procedural Posture

Sample filed this lawsuit in February 2015 and amended the complaint twice.  (*See* Compl. [Doc. No. 1]; Am. Compl. [Doc. No. 5]; Second Am. Compl.)  The Second Amended Complaint is now the operative complaint and it asserts four causes of action against Defendants.  Counts I and II contain state law claims for abuse of legal process and malicious prosecution, respectively.  (*See id.* at ¶¶ 33–44.)  In Count III, Sample asserts a claim under 42 U.S.C. § 1983.  (*See id.* at ¶¶ 45–52.)  In particular, Sample alleges that Defendants violated his constitutional rights by "bringing criminal charges against him" because the Firm disregarded the conflict of interest and because Defendants "had no policy in place that would have required [the Firm] to conflict the case out or that did not allow the City Attorney to also represent other people or businesses when the action was adverse to one of their own residents."  (*See id.* at ¶¶ 46–49.)  Finally, Count IV alleges a claim for negligence based on the theory that Defendants violated their "duty to the Plaintiff to ensure that proper conflict procedures were in place,"

their "duty to properly train[] the Woodbury Police Department on the Plaintiff's rights to bear arms and be free of unreasonable searches and seizures," and their duty to "properly train [their] officers and employees and contractors." (*Id.* at ¶¶ 54–56.)

Previously, Defendants moved to dismiss the complaint and this Court granted that motion. (*See* Order dated 9/3/2015 [Doc. No. 41].) In relevant part, the Court dismissed all of Sample's claims against the City, the Firm, and the Attorneys, with prejudice, based on a finding that Defendants were entitled to absolute prosecutorial immunity. (*See id.*) Sample appealed this decision and the United States Court of Appeals for the Eighth Circuit affirmed in part, reversed in part, and remanded. *Sample v. City of Woodbury*, 836 F.3d 913 (8th Cir. 2016). The Eighth Circuit affirmed this Court's dismissal of Sample's claims against the Firm and the Attorneys based on absolute prosecutorial immunity. *See id.* at 916–17. However, it also held that this same immunity did not bar Sample's claims against the City and reversed this Court's decision on that basis.[3] *See id.* at 917–18.

The City now moves that Sample's remaining claims be dismissed with prejudice, and for an award of the City's reasonable costs.[4] (*See* Renewed Mot. to Dismiss; City's

---

[3] The Eighth Circuit noted that Sample had not challenged the dismissal of his negligent failure to train claims contained in Count IV. *Sample*, 836 F.3d at 915 n.2. At the hearing on the Renewed Motion to Dismiss, Sample conceded that he had not appealed the dismissal of that claim against the City. Thus, Sample's negligent failure to train claim against the City is dismissed with prejudice based on statutory discretionary immunity. (*See* Order dated 9/3/2015 at 14–15.)

[4] Although the City's Renewed Motion seeks "reasonable costs," the City offers no argument regarding why it is entitled to fees and costs, or on what basis there would be such an award. Thus, to the extent the City's Renewed Motion contains a request for

5

Mem. in Supp. [Doc. No. 57]; City's Reply [Doc. No. 62].) Sample opposes the City's Renewed Motion. (*See* Pl.'s Mem. in Opp. [Doc. No. 61].)

## II. DISCUSSION

### A. Legal Standard

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, *see Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The U.S. Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), clarified that this Rule does not require that a complaint contain "detailed factual allegations," but it does require that it contain facts

---

attorneys' fees, that request is denied.

with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### B. Sample's Remaining Claims

As described above, Sample's § 1983 claim, along with his state law claims for abuse of process, malicious prosecution, and negligence related to the City's lack of a conflicts policy (but not the City's failure to train) remain. However, in opposing the City's Renewed Motion to Dismiss, Sample contends that his § 1983 claim is more expansive than the City—or this Court—initially understood. (*See* Pl.'s Mem. in Opp. at 8–19.) Sample now argues that he alleged substantive violations of his Second, Fourth, Fifth, and Fourteenth Amendment rights related to the warrantless search and seizure of his motorcycle and gun *in addition to* the alleged violations of his constitutional rights that resulted from the City's failure to have a conflicts policy.[5] (*See id.* at 14–19.) Notably, the alleged illegal search and seizure and associated constitutional violations are mentioned in only two paragraphs of the Second Amended Complaint and not at all in Count III, which contains Sample's § 1983 claim. (Second Am. Compl. at ¶¶ 8, 25.)

---

[5] Sample did not advance this argument to the Court on Defendants' prior motion to dismiss, nor to the Eighth Circuit on appeal. *See Sample*, 836 F.3d at 915 (describing Sample's § 1983 claim and making no mention of alleged search and seizure violations).

Moreover, Sample has not named any of the officers involved in this search and seizure as defendants.

### C. The Section 1983 Claims

The Court addresses Sample's § 1983 claims in two parts. First, the Court finds that Sample has not properly plead any claim related to the alleged illegal search and seizure. Second, the Court holds that Sample's claim related to the City's lack of an adequate conflicts policy fails as a matter of law.

#### 1. Search and Seizure Claim

Municipalities may not be held liable under § 1983 for injuries caused by their agents or employees on a theory of vicarious liability like respondeat superior. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013); *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Instead, to reach a municipality, a plaintiff must bring a § 1983 claim against a specific agent or employee in his/her official capacity. *Parrish*, 594 F.3d at 997 ("As we have noted, a suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." (alterations and quotation marks omitted)). In addition, "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise[.]" *Atkinson*, 709 F.3d at 1214 (quotation marks and citations omitted) (unconstitutional policy, custom, or failure to train claims against a municipality are often called "*Monell* claims" after *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)).

However, "[the Eighth Circuit] has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005); *see Brockinton*, 503 F.3d at 674.

Sample has not named any of the police officers involved in the alleged illegal search and seizure as defendants. To the extent Sample alleges that his constitutional rights were violated by this specific search and seizure, he must bring that claim against the officer(s) involved. *See Parrish*, 594 F.3d at 997. Sample's failure to plead a substantive claim against the officer(s) also precludes him from asserting any *Monell* claim for failure to train against the City.[6] *See McCoy*, 411 F.3d at 922.

### 2. Inadequate Conflicts Policy Claim

Sample's § 1983 claim premised on the City's alleged lack of an adequate conflicts policy fails for at least three reasons. First, as just described, for the City to be held liable on this *Monell* claim, there must be individual liability on an underlying substantive claim. *McCoy*, 411 F.3d at 922; *Brockinton*, 503 F.3d at 674. Here, the relevant individuals are the Firm and the Attorneys since Sample has not sued any City official. However, this Court and the Eighth Circuit have already determined that neither the Firm nor the Attorneys are individually liable on any of Sample's claims. *Sample*, 836 F.3d at 916–17. Thus, Sample's *Monell* claim related to the lack of a conflicts policy

---

[6] Besides these fatal legal flaws, Sample's pleadings are inadequate, consisting of legal conclusions and almost no factual allegations about the search and seizure itself. *Twombly*, 550 U.S. at 570 (a complaint must contain "enough facts to state a claim to relief that is plausible on its face"). Moreover, any failure to train claim related to the search and seizure would fail for the reasons described below. *See infra* Part II.C.2.

must be dismissed. *See McCoy*, 411 F.3d at 922 (dismissing the plaintiff's *Monell* claims against a municipality where there was no individual § 1983 liability against the officers).

Second, as previously discussed, municipal liability on a *Monell* claim cannot be premised on a theory of vicarious liability like respondeat superior. *Atkinson*, 709 F.3d at 1214; *Parrish*, 594 F.3d at 997; *Brockinton*, 503 F.3d at 674. Thus, Sample cannot rely on the acts of the Firm or the Attorneys to establish that the City's alleged lack of an adequate conflicts policy caused the violation of his constitutional rights. Nonetheless, the vast majority of Sample's allegations focus on how the acts of the Firm and the Attorneys violated his constitutional rights. (*See* Second Am. Compl. at ¶¶ 7, 11–13, 16–18, 23, 27–32, 46–48.)

Third, Sample's *Monell* claim is legally insufficient.

> The failure to have a policy does not give rise to municipal liability unless such failure reflects a deliberate indifference to the citizenry's constitutional rights. In most cases, a plaintiff can show deliberate indifference only by proving the existence of a history or pattern of constitutional violations such that the need for additional training or more detailed policies was obvious. But an isolated incident of a constitutional violation may trigger municipal liability if the violation is accompanied by a showing that the municipality had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.

*Der v. Connolly*, 825 F. Supp. 2d 991, 1000 (D. Minn. 2010) (citations and quotation marks omitted). "[A] municipality may not be held liable under § 1983 merely because it failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion." *Atkinson*, 709 F.3d at 1216. Municipalities are not required to have policies regarding—or train their employees/agents on—things that are obvious. *See Parrish*, 594 F.3d at 998–99 (holding

that a county was not required to provide training to its sheriff's deputies that they could not sexually assault women who were in custody). The lack of the relevant policy must be the "moving force" behind the plaintiff's injuries (i.e., it must cause the plaintiff's injury). *Id.* at 1000. This is a rigorous causation standard. *Id.*

Sample contends that the City "had no policy in place that would have required the [Firm] to conflict the case out . . . ." (Second Am. Compl. at ¶ 49.) But the City needed no such policy considering that the Attorneys were under ethical obligations not to pursue any case that created a conflict of interest. *See* Minn. R. Prof. Conduct 1.7–1.10; *Parrish*, 594 F.3d at 998–99. Moreover, the City was not deliberately indifferent when it relied on the Attorneys' ethical training and obligations to assume that they would properly handle conflicts of interest (by referring them to another law firm), regardless of any City policy. *See Der*, 825 F. Supp. 2d at 1000–01 (holding that a county's reliance on the training of its officers was not deliberate indifference).

Furthermore, it is impossible to conclude that the City's lack of a conflicts policy was the "moving force" behind Sample's injuries. *See Parrish*, 594 F.3d at 1000 (deciding that the causal link between the county's alleged failure to train and the plaintiff's injuries was so tenuous that it failed as a matter of law); *see also Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 395 (8th Cir. 2007) (rejecting plaintiff's § 1983 *Monell* claim premised on the municipal defendant's lack of a policy regarding the use of canine units in part because such a claim "conflicts with the rule that a claim for municipal liability premised on actions taken pursuant to an official municipal policy must demonstrate that the policy itself is unconstitutional"). The Firm and the Attorneys

11

exercised considerable discretion when deciding to prosecute Sample despite their conflict of interest. Put another way, there is no reason to believe that a City policy prohibiting a prosecution under those circumstances would have deterred them and prevented Sample's injuries. However, even assuming that such a policy might have prevented Sample's injuries, the lack of that policy it is not enough to sustain a *Monell* claim against the City. *See Atkinson*, 709 F.3d at 1216.

The deficiencies just described are legal in nature and cannot be remedied through amendment. Thus, even if Sample requested leave to amend, the Court would deny such a motion based on futility.[7] *See Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) (a proposed amended complaint is properly denied as futile where it could not withstand a Rule 12(b)(6) motion to dismiss). For this reason, Sample's § 1983 *Monell* claim against the City is dismissed with prejudice.

**D. Sample's State Law Claims**

As previously described, Sample asserts several state law claims against the City. *See supra* Part I.B. However, the Court's subject matter jurisdiction is based on the federal question presented by Sample's § 1983 claim. Because Sample's § 1983 claim fails as a matter of law, the question is whether this Court should exercise supplemental jurisdiction over the remaining state law claims.

---

[7] Sample has not formally moved to amend his complaint, *see* Fed. R. Civ. P. 15(a)(2), but did request that "[i]f the Court deems it necessary, . . . that he be allowed to amend the pleadings to more consistently and succinctly plead any claims against the [City]." (Pl.'s Mem. in Opp. at 13–14.)

Federal district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Important here, a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

> The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (alterations, citations, and quotations omitted); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

As it does in many cases with a similar procedural posture, the balance of the factors just described weigh in favor of dismissing Sample's remaining state law claims without prejudice. *See Wilson*, 821 F.3d at 970–71. These claims deal solely with matters of state law that would be best addressed in state court. Moreover, since no discovery has been conducted and both parties are located in Minnesota, convenience,

fairness, and judicial economy are also served—or at least not negatively impacted—by this Court declining to exercise supplemental jurisdiction.

### III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendant City of Woodbury's Renewed Motion to Dismiss ("Renewed Mot. to Dismiss") [Doc. No. 56] is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Plaintiff's 42 U.S.C. § 1983 *Monell* claim against the City is **DISMISSED WITH PREJUDICE**;

    b. Plaintiff's state law claims against the City are **DISMISSED WITHOUT PREJUDICE** with the exception of his negligent failure to train claim, which is **DISMISSED WITH PREJUDICE**;

    c. To the extent that the Renewed Motion to Dismiss contains a request for attorneys' fees, that request is **DENIED**.

2. This Order, in conjunction with the Court's previous order dated September 3, 2015 [Doc. No. 41] and the Eighth Circuit's decision dated September 6, 2016 [Doc. No. 48], disposes of all of Plaintiff's claims against Defendants.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: May 12, 2017                                  s/ Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge